# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DENISE KREKSTEIN,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. 20-5770** |
| **MCDONALD'S CORPORATION,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

**Rufe, J.**                                                              **June 17, 2022**

       Defendant McDonald's Corporation moves to compel Plaintiff Denise Krekstein, as trustee for the Rita Getz Feldman Trust ("the Trustee"), to produce a notebook for forensic testing.[1] In the alternative, McDonald's requests that the Court strike references to the "writing" from the Complaint and prohibit the Trustee from presenting evidence concerning the notebook at trial.[2] For the reasons stated below, the Court will grant the motion to permit forensic testing of the notebook.

## I.   BACKGROUND

       This dispute concerns a ground lease that McDonald's and Rita Getz Feldman executed in 1994 for a property in Philadelphia.[3] The lease contains a purchase option allowing McDonald's to buy the property at a set price within one year of receiving written notice of Ms. Feldman's death.[4] Ms. Feldman transferred the property to the Rita Getz Feldman Trust in April

---

[1] Def.'s Mot. Compel [Doc. No. 31] at 1.

[2] Def.'s Mot. Compel [Doc. No. 31] at 1.

[3] Compl. [Doc. No. 1-4] ¶¶ 1, 15.

[4] Compl. [Doc. No. 1-4] ¶ 23.

of 2004, and Ms. Feldman died on November 7, 2004.[5] The Trustee alleges that she called and

sent written notice to McDonald's of Ms. Feldman's death around November 15, 2004.[6]

Although the Trustee does not have a copy of the notice, she asserts that she memorialized her

actions in a notebook entry that reads, "Nov. 15, 2004 – reported death."[7] McDonald's contends

that it did not receive notice of Ms. Feldman's death until 2019.[8] After McDonald's attempted to

exercise the purchase option in August of 2020, the Trustee filed suit against McDonald's

seeking a declaratory judgment and asserting a claim for breach of the lease.[9] McDonald's has

filed a counterclaim also seeking a declaratory judgment and asserting a claim for breach of the

lease.[10]

      McDonald's sought to examine the Trustee's notebook through a discovery request, after

which the Trustee produced a photograph of the notebook and a redacted scan of the page where

"Nov. 15, 2004 – reported death" appears.[11] In December of 2021, McDonald's served a notice

seeking production of the entire notebook for forensic testing.[12] The Trustee objected, and the

parties met and conferred to resolve the dispute in January of 2022.[13] McDonald's provided more

details about the tests that its expert, Gerald M. LaPorte, would perform as well as Mr. LaPorte's

---

[5] Compl. [Doc. No. 1-4] ¶¶ 27-29.

[6] Compl. [Doc. No. 1-4] ¶ 31.

[7] Compl. [Doc. No. 1-4] ¶¶ 32–34.

[8] Answer and Am. Counterclaims [Doc. No. 19] ¶¶ 136–37, 139.

[9] Compl. [Doc. No. 1-4] ¶¶ 63, 69–85. McDonald's removed the case to federal court. Not. Removal [Doc. No. 1]. The Court previously dismissed Plaintiff's breach of contract claim. Mem. Op. July 19, 2021 [Doc. No. 10].

[10] Answer and Am. Counterclaims [Doc. No. 19] ¶¶ 162-74.

[11] Def.'s Mem. L. Supp. Mot. Compel [Doc. No. 31-1] at 6.

[12] Def.'s Mem. L. Supp. Mot. Compel [Doc. No. 31-1] at 6–7.

[13] Def.'s Mem. L. Supp. Mot. Compel [Doc. No. 31-1] at 6–7.

qualifications.[14] The Trustee maintained her objections, and McDonald's filed the motion to compel.[15]

## II.   LEGAL STANDARD

The scope of discovery encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[16] Under Federal Rule of Civil Procedure 34(a)(1)(A), a litigant may request that the opposing party produce writings that are "in the responding party's possession, custody, or control" for inspection, testing, copying, or sampling.[17] Rule 37(a)(3)(B)(iv) allows a party to file a motion to compel if the opposing "party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34."[18] The determination of "whether to allow testing, including destructive testing, falls within the sound discretion of the court."[19]

"If the parties differ as to whether an inspection or test is appropriate, 'the court must balance the respective interests by weighing the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection.'"[20] When

---

[14] Def.'s Mem. L. Supp. Mot. Compel [Doc. No. 31-1] at 7.

[15] Def.'s Mem. L. Supp. Mot. Compel [Doc. No. 31-1] at 8.

[16] Fed. R. Civ. P. 26(b)(1).

[17] Fed. R. Civ. P. 34(a)(1)(A).

[18] Fed. R. Civ. P. 34(a)(3)(B)(iv).

[19] *Holmes v. J.M. Products, Inc.*, No. 03-2190, 2005 WL 927172, at *3 (W.D. Tenn. Jan. 07, 2005) (citing *Ostrander v. Cone Mills, Inc.*, 119 F.R.D. 417, 418 (D. Minn. 1988)).

[20] *Synbias v. Pharma v. Solux Corp.*, No. 11-3035, 2013 WL 12095236, at *2 (S.D. Cal. June 5, 2013) (quoting *Scruggs v.Int'l Paper Co.*, 278 F.R.D. 698, 700 (S.D. Ga. Jan. 12, 2012)).

3

determining whether to allow a party to engage in destructive testing, courts often weigh the following factors:

> 1) Whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; 2) Whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; 3) Whether there are any less prejudicial alternative methods of obtaining the evidence sought; and 4) Whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial.[21]

Where "the testing at issue would not result in a situation where an object would be wholly consumed or destroyed," some courts have elected to balance the parties' competing interests rather than apply the four-factor test.[22]

## III.  DISCUSSION

### A.  Sufficiency of the Rule 34 Request

The Trustee first argues that the Court should deny McDonald's motion because the request to subject the notebook to testing is deficient.[23] Under Rule 34(b)(1), a request "(A) must describe with reasonable particularity each item or category of items to be inspected" and "(B) must specify a reasonable time, place, and manner for the inspection and for performing the related acts."[24] McDonald's Rule 34 notice described the item to be inspected (the notebook) and offered some details about the time, place, and manner of testing.[25] After the Trustee objected to

---

[21] *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611 (D. Md. 2006); *see e.g., Rapchak v. Freightliner Custom Chassis Corp.*, No. 13-1307, 2014 WL 4169393, at *4 (W.D. Pa. Aug. 20, 2014) (applying the four-factor test)); *Glennon v. Wing Enters. Inc.*, No. 10-324, 2010 WL 4782773, at *12 (D.N.J. Nov. 17, 2010) (same)).

[22] *Synbias*, 2013 WL 12095236, at *2 (quoting *Hunley v. Glencore, Ltd., Inc.*, No. 10-455, 2013 WL 1681836, *3 (E.D. Tenn. April 17, 2013) (citing *Scruggs*, 278 F.R.D. at 700))).

[23] Pl.'s Mem. Opp. Mot. Compel [Doc. No. 32] at 9.

[24] Fed. R. Civ. P. 34(b)(1)(A–B).

[25] Def.'s Mot. Compel Ex. 3 [Doc. No. 31-2].

4

McDonald's request, McDonald's provided additional information about the expert it retained and offered details about the tests he would conduct during the meet-and-confer process.[26] As Rule 34 does not specify the precise level of detail McDonald's notice was required to provide, and in light of the comprehensive information McDonald's provided to the Trustee when the parties met and conferred, the Court will consider McDonald's request as modified by the supplemental description.

### B.  Application of the Four-Factor Test

According to McDonald's and the affidavit from its expert, the testing that McDonald's seeks to compel would minimally damage, rather than destroy, the notebook by taking "micro-punch" samples (each approximately the size of the period at the end of this sentence) from several pages.[27] As the testing would alter the condition of the notebook, however minimally, "the Court will balance the interests at stake by applying the more stringent four-factor test to [McDonald's] request to conduct destructive testing."[28]

#### 1.  *Reasonable, Necessary, and Relevant*

"The first inquiry under the four-pronged analysis is whether the proposed testing is reasonable, necessary, and relevant."[29] McDonald's states that it seeks forensic testing because it questions the authenticity of the notebook entry, noting that "[t]he slanted and squeezed nature of

---

[26] Def.'s Mem. L. Supp. Mot. Compel [Doc. No. 31-1] at 7.

[27] *Synbias*, 2013 WL 12095236, at *3 n.1 ("In fact, the testing will only damage the documents slightly through the removal of micro-punch samples. Thus, the testing will not completely destroy or consume the evidence, but rather damage it."); *see* Def.'s Reply [Doc. No. 33] at 2; Def.'s Reply Ex. A LaPorte Aff. [Doc. No. 33-1] ¶ 7.

[28] *Synbias*, 2013 WL 12095236, at *3 (applying the four-factor test where defendants sought to analyze documents using techniques that require micro-punch analysis).

[29]*Mirchandani*, 235 F.R.D. at 614.

the entry upon which the Trustee relies suggests on its face that it was at best a postscript."[30] McDonald's asserts that the Trustee's conduct, including her failure to produce the writing when McDonald's first sought proof that the Trustee provided notice of Ms. Feldman's death, the decision not to attach the writing to the Complaint, and the refusal to produce the writing until McDonald's filed a formal document request bolster concerns about the entry's legitimacy.[31] Further, McDonald's argues that testing is necessary because a layperson could not assess "the age or authenticity of the Notebook Entry simply by looking at it" as the writing may have been added at a later date.[32]

Although the Trustee argues that such testing is unreasonable because McDonald's has failed to raise a valid challenge to the authenticity of the notebook entry, McDonald's has raised legitimate concerns for purposes of the present motion. It is plausible that a person might add a new entry to an old notebook. The Trustee also asserts that McDonald's could simply depose the Trustee and conduct a visual examination of the notebook entry to assess its authenticity, but that is not "a substitute for forensic testing."[33] Further, despite the Trustee's contention that "ink date testing can only determine whether a writing was made within the last two years or not," McDonald's expert avers that the proposed tests can shed light on whether the entry was made in 2004 or at a later date even if it was made more than two years ago.[34]

---

[30] Def.'s Mem. L. Supp. Mot. Compel [Doc. No. 31-1] at 11.

[31] Def.'s Mem. Supp. Mot. Compel [Doc. No. 31-1] at 10.

[32] Def.'s Reply [Doc. No. 33] at 4.

[33] *Synbias*, 2013 WL 12095236, at *4.

[34] Pl.'s Mem. Opp. Mot. Compel [Doc. No. 32] at 11 (emphasis omitted); Def.'s Reply Ex. A LaPorte Aff. [Doc No. 33-1] ¶¶ 9–13.

As the Trustee asserts that the notebook entry "memorializes" that she notified McDonald's of Ms. Feldman's death, the authenticity of the entry is highly relevant to the central claims in this case.

### 2. *Prejudice to Plaintiff*

Next, the Court considers whether submitting the notebook to the proposed tests will prejudice the Trustee. The Trustee argues that "having to punch holes into the entry in the Notebook and elsewhere, will likely destroy the evidence."[35] However, McDonald's expert has averred that the tests he intends to perform are minimally invasive and will not affect the legibility of the notebook entry.[36] The Court notes that the notebook has no intrinsic value that will be affected by the testing.

The Trustee further argues that sending the notebook to McDonald's expert for testing could result in loss or damage.[37] However, this remote possibility may be mitigated by using an overnight courier service or arranging a hand-to-hand transfer. The Trustee can also photograph the notebook prior to testing to preserve the evidence in its current form for use at trial, in the unlikely event that the notebook is destroyed or seriously damaged, due either to errors during testing or issues that arise in transit.[38]

---

[35] Pl.'s Mem. Opp. Mot. Compel [Doc. No. 32] at 2.

[36] Def.'s Reply Ex. A LaPorte Aff. [Doc No. 33-1] ¶ 6 ([T]he testing I will conduct will in no way harm the legibility of the Notebook Entry or any other part of the Notebook").

[37] Def.'s Reply [Doc. No. 33] at 7.

[38] The Trustee claims that "[t]he Notebook would bolster and substantial [sic] her testimony, and the failure to be able to present this tangible evidence would thus be highly prejudicial to the Trustee. A stipulation or photographs of the Notebook will not suffice." Pl.'s Mem. Opp. Mot. Compel [Doc. No. 32] at 12. This argument is unconvincing. Photographs, scans, or video footage taken of the notebook in its current form would allow jurors to perceive whether the notebook showed signs of age and assess the consistency of the entries.

The Trustee further argues that "the Trustee will need to engage her own expert to conduct the tests," which will put her at a disadvantage if she needs to pay her own legal fees. Pl.'s Mem. Opp. Mot. Compel [Doc. No. 32] at 13. As

*3.   Non-Destructive Alternative Methods*

The third prong of the analysis requires the Court to determine whether non-destructive alternative methods are available to test the notebook entry. Neither party has presented alternative means of examination that would provide the information that McDonald's expert's testing could offer, and again, the testing should only minimally affect the physical integrity of the notebook.[39]

*4.   Adequate Safeguards*

Fourth, the Court must consider "safeguards that may be put in place to minimize the potential for prejudice to the non-movants."[40] These safeguards may include:

> (1) adequate opportunity for the non-movants to photograph or otherwise record the character and condition of the object to be tested prior to the destructive testing, (2) notice to the non-movants of the time, place, and exact manner of the destructive testing, (3) reasonable opportunity for the non-movants and their experts to observe and record the procedures involved in the destructive testing, (4) the right of the non-movants to conduct or participate in similar tests with a portion of the sample to be tested, (5) provision for discovery of the results of the movant's tests, (6) allocation of costs as justice may require.[41]

Here, numerous safeguards are available to minimize potential prejudice to the Trustee. The Trustee may photograph, scan, or take other measures to preserve the notebook entry prior

---

McDonald's notes, this argument assumes its expert will determine that the entry is fraudulent, rather than reach inconclusive results or confirm that the notebook entry is authentic. Def.'s Reply [Doc. No. 33] at 7. Additionally, the Trustee initiated this lawsuit, and the possibility of expert testimony is part and parcel of litigation.

[39] As noted previously, allowing McDonald's to perform a visual examination of the notebook and depose the Trustee would not replace forensic testing as a non-expert could not gauge the age of the entry by viewing it. Def.'s Reply [Doc. No. 33] at 2–4; *see Synbias*, 2013 WL 12095236, at *4. Although McDonald's, as an alternative, suggested striking references to the writing from the Complaint and barring the Trustee from using the notebook as evidence, the Trustee does not address this option in her brief and stresses the importance of this evidence to her case. *See* Pl.'s Mem. Opp. Mot. Compel [Doc. No. 32] at 12.

[40] *Mirchandani*, 235 F.R.D. at 616–17.

[41] *Id.* at 617 (internal quotation and alterations omitted).

to testing. McDonald's has provided detailed descriptions of the tests that its expert plans to perform on the notebook. The Trustee, and presumably the Trustee's expert if she chooses to retain one, may observe McDonald's expert as he performs the tests.[42] The proposed testing will not hamper the Trustee's expert from performing similar tests, nor will it damage the legibility of the notebook entry.[43] Further, the results of the tests will be made available to the Trustee, and she will have the opportunity to challenge McDonald's expert's methodology.[44]

## IV.   CONCLUSION

The proposed forensic testing is warranted even under the more searching analysis courts have developed for determining whether to allow a party to conduct destructive testing. McDonald's has articulated concerns about the authenticity of the notebook entry. The information McDonald's seeks is necessary, reasonable, and unavailable through other means. McDonald's expert has detailed the precise testing the notebook entry will undergo, which will preserve the legibility of the notebook and the entry at issue. Additionally, adequate safeguards exist to minimize the prejudice the Trustee may face due to this forensic testing. An order will be entered.

---

[42] Def.'s Mot. Compel Ex. 3 [Doc. No. 31-2] at 2.

[43] Def.'s Reply Ex. A LaPorte Aff. [Doc No. 33-1] ¶ 7.

[44] Def.'s Reply [Doc. No. 33] at 6.